REQUESTED BY: Senator John DeCamp Member of the Legislature 2618 State Capitol Lincoln, Nebraska 68509
Dear Senator DeCamp:
This letter is in response to your request of January 30, 1981 that this office furnish an opinion as to the constitutionality of LB 134, a bill to modify the Nebraska Political Accountability and Disclosure Act. The effect of the revision is to restrict the disposition of campaign funds and the apparent purpose for the restriction is to prevent the funds from being used in a manner which would benefit the candidate's personal financial interests other than by promoting his nomination for, or election to, a public office. The purpose is a legitimate one for legislative action. However, the manner in which the bill attempts to accomplish its purpose is not without question.
As the United States Supreme Court has noted in a case arising under the Federal Election Campaign Act, `close examination of the specificity of the statutory limitation is required where, as here, the legislation imposes criminal penalties in an area permeated by First Amendment interests.'Buckley v. Valeo, 424 U.S. 1, 40, 41,46 L.Ed.2d 659, 700, 95 S.Ct. 612 (1976). Therefore any questions of vagueness and overbreadth in the proposed statutory language will be closely scrutinized.
Questions you have posed focus on the language `directly influencing the nomination or election of the candidate' (proposed § 49-1446(3)) and `personal services' (proposed § 49-1446(4)(f)). Standing alone, the term `directly influencing' might fail to pass constitutional muster. However, a person is assisted in ascertaining the meaning of the language by Neb.Rev.Stat. § 49-1429 (Reissue 1978), defining the term `influencing' as `. . . promoting, supporting, affecting, modifying, opposing, or delaying by any means, including the providing of or use of information, statistics, studies, or analyses' and § 49-1419, defining `expenditure' as a payment `. . . in assistance of, or in opposition to, . . . .' Further assistance is provided in proposed paragraph (4) to § 49-1446, which lists certain items for which payments cannot be made from campaign funds. It becomes obvious that the language's intent is to limit legal payments made from campaign contributions to expenses incurred in order to carry on a campaign, such as filing fees, advertising expenses, rental of campaign headquarters, travel expenses incurred to further the campaign effort, salary for campaign aides, polling costs, and so on. We begin to approach a gray area, however, as the expenses become more personal. The proposed legislation approaches this problem by prohibiting certain types of payments altogether, even though such payments could arguably have been made to directly influence the nomination or election of the candidate. For instance, making installment payments for an automobile owned by a candidate are prohibited, even though the candidate uses the automobile exclusively for his campaigning. (proposed § 49-1446(4)(b)). Therefore any vagueness is eliminated, at least as relates to the particular areas where specific prohibitions are encountered. Considering the difficulty that would be encountered in attempting to make a listing of allowed and disallowed expenditures and in light of the apparent intent of the bill, it is likely to withstand a `void for vagueness' challenge.
The section relating to `personal services' (proposed49-1446(3)(f)) is also sufficient to put one on notice as to what conduct is prohibited. It is impermissible to use funds from campaign contributions to pay for an individual's services unless such services are in furtherance of the campaign.
Proposed § 49-1446(4)(g), prohibiting the use of funds from campaign contributions to purchase office supplies, staff, or furnishings for the incumbent, is overbroad in violation of the First Amendment and discriminatory in violation of the Fifth Amendment. The law as written prohibits these purchases even though the use of the supplies and staff are directly related to the campaign, such as campaign literature and campaign aides. A challenger is not prohibited from making these expenditures, however. This provision has no rational relationship to the state's interest in maintaining the integrity of the political process by preventing the use of political contributions as a means of personal financial gain. The deficiency in this paragraph will not affect the validity of the remainder of the bill however.
Lacking less restrictive alternatives to accomplish the state's interest, it is our opinion that the proposed legislation, with the exception as noted, is constitutional.
Sincerely, PAUL L. DOUGLAS Attorney General Mark D. Starr Assistant Attorney General